IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM H. CHISM, III,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CHANG, et al.,<br><br>　　　　　Defendants. | No. 2:20-CV-1072-DJC-DMC-P<br><br><br>FINDINGS AND RECOMMENDATIONS |

　　　　Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Defendants' motion for summary judgement. See ECF No. 43. Plaintiff has filed an opposition. See ECF No. 48. Defendants have filed a reply. See ECF No. 50. Also before the Court are Plaintiff's motion for sanctions, see ECF No. 54, and Defendants' opposition thereto and motion to strike, see ECF No. 55. For the reasons explained below, the Court finds that Defendants' motion for summary judgment should be granted and that all other pending motions should be denied as moot.

　　　　　The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P.

1

56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.
>
> Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

///

In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

## I. BACKGROUND

### A. Plaintiff's Allegations

This action proceeds on Plaintiff's verified original complaint. See ECF No. 1. Plaintiff's claims arise from his time as an inmate at the California Health Care Facility ("CHCF"). See id. Plaintiff names the following defendants: (1) Chang, Correctional Counselor; (2) De La Rosa, Correctional Sergeant; (3) Cross, Correctional Officer; and (4), Domingo, Correctional Officer. See id. at 2. Plaintiff claims that Defendants retaliated against him for exercising his First Amendment right to petition the government. See id. at 3. The complaint details how Defendants allegedly acted after Plaintiff reported in 2019 that he had been sexually assaulted in prison in 2003. See id. at 3-7.

According to Plaintiff, in February 2019, Plaintiff submitted a request for health care services because he was having trouble with focusing and lack of sleep. See id. at 3. That month, he was able to get an appointment with two doctors (who are not defendants) and Defendant Chang, a Correctional Counselor. See id. During the visit, Plaintiff reported that his lack of sleep stemmed from a 2003 incident where he was sexually assaulted in prison. See id. at

5. Defendant Chang immediately ended the appointment and questioned, "You're just now saying something about it?" Id.

Defendant Chang then told Plaintiff to wait in a nearby room for a sergeant. See id. While Plaintiff waited, he was joined by Defendants Cross and Domingo. See id. They patted Plaintiff down, placed him in mechanical restraints, then moved him to a cage intended for unruly or violent inmates. See id. They ordered Plaintiff to completely disrobe, and he had to wait naked while the officers searched his clothing for contraband. See id. This lasted for about ten minutes. See id. Passing medical staff, inmates, and officers walked by the cage and could see Plaintiff while he was waiting. See id. Plaintiff was eventually given his clothes back. See id.

Plaintiff had to wait in the cage for about an hour without being allowed to use the restroom or drink water. See id. Defendant De La Rosa finally came to meet Plaintiff. See id. When Plaintiff asked why he was placed in restraints and strip searched in front of non-custody prison officials, Defendant De La Rosa replied, "You want to claim you were raped, this is what you can expect." Id. at 5-6. When Plaintiff clarified that he had been sexually assaulted sixteen years earlier, Defendant De La Rosa said, "What? Are you trying to change your story now? It's my job to discourage that kind of nonsense. Don't you have anything better to do?" Id. at 6. Defendant De La Rosa then threatened to report Plaintiff to the Investigative Services unit if he didn't leave the matter alone. See id.

Plaintiff alleges that Defendants retaliated against him because they believed he was attempting to report a sexual assault under the Prison Rape Elimination Act. See id.

**B.   Procedural History**

The Court screened the case and found it appropriate for service on October 10, 2021. See ECF No. 9. Defendants filed their answer on August 23, 2021. See ECF No. 18.

The Court issued a discovery and scheduling order on October 27, 2021. See ECF No. 22. Pursuant to that order, discovery closed on September 26, 2022, and dispositive motions were due within 90 days of this date. See id. Ultimately, the dispositive motion filing deadline was extended to December 26, 2023. See ECF No. 34. Defendants timely filed the currently

pending motion for summary judgment on December 26, 2023. See ECF No. 43. Plaintiff filed an opposition on March 27, 2024. See ECF No. 48. Defendant filed a reply on April 11, 2024. See ECF No. 50.

## II.  THE PARTIES' EVIDENCE

### A.  Defendants' Evidence

Defendants' motion for summary judgment is supported by points and authorities, ECF No. 43-1, a separate statement of undisputed facts, ECF No. 43-2, the declaration of Litigation Coordinator E. Campos, ECF No. 43-3, Exhibits A through C to the Campos declaration, ECF No. 43-4, the declaration of Defendant R. Chang, ECF No. 43-5, the declaration of Defendant M. Cross, ECF No. 43-6, the declaration of Defendant F. De La Rosa, ECF No. 43-7, the declaration of Defendant M. Domingo, ECF No. 43-8, and the declaration of defense counsel John Faulconer, ECF No. 43-10, and Exhibit A to the Faulconer declaration, which is a copy of the transcript of Plaintiff's deposition, ECF No. 43-11.

According to Defendants, the following facts are not in dispute:

Facts Relating to Defendant Chang

1. On February 27, 2019, Plaintiff William Chism submitted a request for healthcare, requesting an over-the-counter sleep aid. (Faulconer Decl. ¶ 2, Exhibit A, Chism Depo. at p. 22:17-24.)

2. On February 28, 2019, Chism had a previously scheduled Interdisciplinary Treatment Team (IDTT) meeting with two healthcare providers and Defendant Chang to determine whether Chism should remain in mental health treatment. (Faulconer Decl., ¶ 2, Exhibit A, Chism Depo. at p. 26:5-9, 27:8-15; Chang Decl. ¶ 2.)

3. At the IDTT meetings, or otherwise, Chang does not have access to an inmate's mental health or healthcare records and only has access to an inmate's custodial records which are titled, usually, SOMS and/or ERMS which can contain both confidential and non-confidential versions. (Chang Decl. ¶ 2.)

4. During the IDTT meeting, Chism reported that he was having trouble sleeping and needed a sleep aid; Chism stated that part of the reason he needed a sleep aid was because, approximately two months prior, he saw the inmate who had raped him in 2003 at CHCF; Chism testified that he reported the rape to receive treatment regarding his sleep issues, not to initiate an investigation in 2019. (Faulconer Decl., ¶ 2, Exhibit A, Chism Depo. at p. 32:3-23, 33:7-14, 70:3-16; Chang Decl. ¶ 3.)

5

5.  The CDCR [California Department of Corrections and Rehabilitation] Department Operations Manual (DOM) section 54040.1, *et seq.* (2019) requires that a correctional counselor, such as Chang, take certain actions when an inmate reports a sexual assault that occurs in a correctional facility including immediately contacting his supervisor regarding an inmate's report. Specifically, DOM section 54040.7 states, in part, "[a]ll staff are responsible for reporting immediately and confidentially to the appropriate supervisor any information that indicates an offender is being, or has been the victim of sexual violence. . . In addition to reporting, employees have a responsibility to assist the offender and refer him to medical/mental health for evaluation." (Chang Decl. ¶ 2; (Campos Decl. ¶ 5, Exhibit B, California Department of Corrections and Rehabilitation of Department Operations Manual Chapter 5 – Adult Custody and Security Operation – Article 44 – Prison Rape Elimination Act (2019) (DOM PREA).)

6.  Chang asked Chism if he had previously reported or submitted a Prison Rape Elimination Act (PREA) form regarding the assault, and Chism stated he had not; Chang did not see any information in Chism's records that indicated he had reported or been victim of a sexual assault. (Chang Decl. ¶¶ 2, 3.)

7.  Chang telephoned his supervisor, Correctional Counselor T. Miller, to inform her of Chism's reported assault, and Miller informed Chang that she would be sending custody staff to the appointment area to take custody of Chism and transport him in order to look into the allegations; Chang escorted Chism out of the appointment room into the adjacent waiting area and waited with him until two Correctional Officers arrived and took custody of Chism and escorted him away; that was the end of Chang's responsibilities regarding Chism's report, and Chism and Chang had no further interactions that day. (Chang Decl. ¶¶ 4, 5; Faulconer Decl., ¶ 2, Exhibit A, Chism Depo. at 51:20-22.)

8.  Chism alleges that after stating he was raped in 2003 during the IDTT meeting, Chang stated, "You are now saying something about it?" in a nonchalant manner, ended the IDTT meeting, and informed him the sergeant wanted to speak with him. (Faulconer Decl., ¶ 2, Exhibit A, Chism Depo. at p. 37:2-24, 47:20-28, 50:2-12.)

Facts Relating to Defendants Cross and Domingo

9.  On February 28, 2019, Defendants Cross and Domingo worked as Search and Escort Correctional Officer at CHCF assigned to Echo Yard. (Domingo Decl. ¶ 2; Cross Decl. ¶ 2.)

10. On February 28, 2019, Defendants Cross and Domingo were ordered to escort Chism to the Facility E clinic holding cells. (Domingo Decl. ¶¶ 4, 5; Cross Decl. ¶¶ 4, 5; De La Rosa Decl. ¶¶ 4, 5.)

11. Defendants Domingo and Cross arrived to transport Chism from the waiting area, asked for Chism's identification, told him to stand up, turn around, conducted a clothed body search by patting Chism down, put him in restraints, and escorted him to the Enhanced Outpatient (EOP) clinic. (Domingo Decl. ¶ 4; Cross Decl. ¶ 4; Faulconer Decl., ¶ 2, Exhibit A, Chism Depo. at 53:7-24, 55:14-56:2.)

6

12. Chism was placed in a holding cell, and Defendants Cross and Domingo performed an unclothed search of Chism and searched his clothing; they did not find any contraband and Chism's clothes were returned to him after the search; after Chism's clothes were returned, Defendants Cross and Domingo's responsibilities regarding Chism's report ended, and they left. (Domingo Decl. ¶¶ 4, 5; Cross Decl. ¶¶ 4, 5 4; Faulconer Decl., ¶ 2, Exhibit A, Chism Depo at 57:7-58:3, 61:17-23)

13. The unclothed search is a policy requirement to ensure that the inmate is not in possession of dangerous contraband that could be used to harm himself or someone else and is done to promote the safety and security of inmates, staff, and the institution. (Domingo Decl. ¶ 4; Cross Decl. ¶ 4; (Campos Decl ¶ 6, Exhibit C, California Department of Corrections and Rehabilitation of Department Operations Manual Chapter 5 – Adult Custody and Security Operation – Article 19 – Arrest, Search, and Seizure (2019).)

14. Following the unclothed search, two nurses came to check on Chism for injuries and Chism reported to them that the sexual assault occurred in 2003. (Faulconer Decl., ¶ 2, Exhibit A, Chism Depo. at 67:5-68:25; Campos Decl. ¶ 5, Exhibit B, DOM PREA, 54040.12.2)

15. Chism testified that he asked Defendants Cross and Domingo why the unclothed search was conducted, and Defendant Cross responded that he was searched because he reported being raped. (Faulconer Decl., ¶ 2, Exhibit A, Chism Depo. at 61:10-16.)

Facts Relating to Defendant De La Rosa

16. Chism alleges that he waited in the holding cell for approximately an hour before Defendant De La Rosa arrived. (Faulconer Decl., ¶ 2, Exhibit A, Chism Depo. at 63:8-13.)

17. On February 28, 2019, Defendant De La Rosa was working as a Correctional Sergeant at CHCF assigned to Echo Yard and was responsible for, among other things, ensuring the safety and security of inmates, staff, and the institution. (De La Rosa Decl., ¶ 2.)

18. Defendant De La Rosa's role when an inmate reports a sexual assault is to interview and screen the inmate's allegations, including obtaining the facts of the allegations and determining whether there is a current safety or security risk and taking the appropriate steps to alleviate that risk. (De La Rosa Decl. ¶ 4; Campos Decl. ¶ 5, Exhibit B, DOM PREA, 54040.7.)

19. After De La Rosa makes initial contact with an inmate regarding the allegations, she turns over the investigation to a Locally Designated Investigator (LDI) Officer, who is generally from CHCF's Investigatory Services Unit (ISU). (De La Rosa Decl. ¶ 4; Campos Decl. ¶ 5, Exhibit B, DOM PREA, 54040.12, 54040.12.)

20. On February 28, 2019, Defendant De La Rosa was informed that Chism had made allegations that he had been sexually assaulted and a PREA interview was required, and she instructed Officers Cross and Domingo to place Chism in a holding cell for his safety pending

the interview. (De La Rosa Decl. ¶¶ 4, 5.)

21.    Defendant De La Rosa arrived at the EOP clinic and privately interviewed Chism and asked him to provide some factual information regarding his allegations; Chism did not provide information such as the date or time of the assault, or the name of the assailant, but Chism did inform De La Rosa that the assault occurred 16 years prior and was unsure why CDCR staff was taking the report so seriously. (De La Rosa Decl. ¶¶ 4, 5; Faulconer Decl., ¶ 2, Exhibit A, Chism Depo. at 65:25-67:4.)

22.    After this screening interview, Defendant De La Rosa then turned over the interview and investigation to LDI Officer R. White; Defendant De La Rosa had no further involvement regarding Chism's allegations. (De La Rosa Decl. ¶¶ 4, 5; (Campos Decl. ¶ 4, Exhibit A, Appeal # CDCF-E-19-01232 Documents at AGO0000010-11.)

23.    Chism alleges that Defendant De La Rosa told him that he was subject to an unclothed search because he reported a rape; after Chism told her that the rape occurred some 16 years ago, De La Rosa allegedly responded that Chism was now changing his story and that it was her job to discourage nonsense and that this could be reported to ISU. (Faulconer Decl., ¶ 2, Exhibit A, Chism Depo. at 71:19-72:13.)

ECF No. 43-2.

**B.**    **Plaintiff's Evidence**

Plaintiff's opposition consists of a memorandum of points and authorities, a separate statement of disputed facts, Plaintiff's declaration, and Exhibits A through J. See ECF No. 48. Plaintiff's exhibits are summarized as follows:

| | |
|---|---|
| Exhibit A | The document is indecipherable but appears to be a Mental Health Interdisciplinary Progress Note. |
| Exhibit B | The document is indecipherable but appears to be a Mental Health Interdisciplinary Progress Note. |
| Exhibit C | The document is indecipherable but appears to be a Mental Health Interdisciplinary Progress Note. |
| Exhibit D | Medical records from a mental health progress visit with physician Bhupinder Lehil dated February 9, 2018. |
| Exhibit E | Medical records from a mental health progress visit with physician Bhupinder Lehil dated February 9, 2018. |
| Exhibit F | Excerpt from the California Department of Corrections and Rehabilitation Operations Manual. |
| Exhibit G | Excerpt from the California Department of Corrections and Rehabilitation Operations Manual. |

| | | |
|---|---|---|
| Exhibit H | | Transcript of Plaintiff's deposition, pages 37 and 38. |
| Exhibit I | | Warden's March 26, 2019, response to Plaintiff's inmate grievance. |
| Exhibit J | | Excerpt from the California Department of Corrections and Rehabilitation Operations Manual. |

ECF No. 48, pgs. 34-61.

### III.  DISCUSSION

In their motion for summary judgment, Defendants argue that Plaintiff cannot prevail on his retaliation claims against them. See ECF No. 43-1. Specifically, Defendants argue: (1) Plaintiff was not engaged in protected activity; (2) Defendants did not take adverse action against Plaintiff; and (3) Defendants' conduct served legitimate penological purposes. See id.

In order to prevail on a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to prevail on a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

///

### A. **Protected Conduct**

Defendants contend that Plaintiff was not engaged in protected conduct on February 27 or 28, 2019. According to Defendants:

> In the screening order, the Court found that Chism alleged that Defendants took adverse action against him to deter him from reporting a rape. (ECF No. 9, 4:3-6.) However, Chism's allegations and testimony indicate that he was reporting the assault as part of his medical treatment and was not seeking an investigation. Defendants were required to investigate and Chism appears to be frustrated and embarrassed that an investigation occurred, but he was not seeking to have his allegations investigated.
> Chism reported the rape to receive medical treatment regarding a sleep issue, and not to initiate an investigation in 2019. (SSMSJ No. 4.) Chism was confused why Defendants, and other staff, was taking his report so seriously and Chism assumed that Defendant De La Rosa believed that the assault was recent. (SSMSJ No. 21.) Chism did not provide specific details regarding the assault to Defendant De La Rosa during the screening interview. (*Id*.) During both PREA interviews with LDI Officer White, Chism indicated that there were no safety concerns, he reported the assault to receive medical treatment, that staff overreacted, and that he was embarrassed based on Defendants' and staff's response. (SSMSJ No. 24.)
> These facts indicate that Chism was not concerned that he was being deterred from reporting a sexual assault, but he takes issue with the procedures that were followed as required by PREA and applicable requirements. After reporting the 2003 assault, Chism chose not to pursue an investigation, so it is unclear what protected conduct he believes he was retaliated against for engaging in.

ECF No. 43-1, pgs. 13-14.

The Court does not agree. The undisputed facts show that Plaintiff sought medical attention for problems sleeping arising from his being raped in 2003. In any event, regardless of the reason Plaintiff sought medical treatment, the Court finds that the act of seeking medical treatment constitutes protected conduct.

### B. **Adverse Action**

Defendants next argue that none of them took adverse action against Plaintiff. Instead, they argue that each acted according to prison policy and that none of their conduct was adverse.

/ / /

/ / /

/ / /

10

1.     <u>Defendant Chang</u>

The undisputed facts show that Defendant Chang ended the IDTT meeting and escorted Plaintiff to a waiting area upon learning of Plaintiff's claim that he had been raped. Neither of these actions was adverse to Plaintiff's interests. To the contrary, they allowed for a mandatory investigation into Plaintiff's serious claim that he had been raped. The Court finds that Defendant Chang is entitled to summary judgment because Plaintiff cannot prove the necessary element of his retaliation claim that Chang took adverse action against Plaintiff.

2.     <u>Defendants Domingo and Cross</u>

The undisputed facts show that, after Defendant Chang escorted Plaintiff to a waiting area, Defendants Domingo and Cross were assigned by Defendant De La Rosa to escort Plaintiff from the waiting area to a holding cell for further investigation relating to his rape claim. Before placing Plaintiff in the holding cell, Defendants Domingo and Cross conducted a clothed body search for contraband. After placing Plaintiff in the holding cell, Defendants Domingo and Cross performed an unclothed body search.

The Court agrees with Defendants that escorting Plaintiff to a waiting area was not in and of itself an adverse action. However, the Court does not agree with Defendants as to the searches, which the Court finds were adverse to Plaintiff's interests. Whether those actions served legitimate penological purposes is discussed below.

3.     <u>Defendant De La Rosa</u>

The undisputed facts show that, upon being informed by Defendant Chang of Plaintiff's rape claim, Defendant De La Rosa instructed Defendants Domingo and Cross to escort Plaintiff from the waiting area to a holding cell. After Plaintiff was placed in a holding cell and searched by Defendants Domingo and Cross, Defendant De La Rosa then conducted a preliminary interview of Plaintiff regarding his rape claim, which was then turned over to the LDI Officer. As with Defendants Domingo and Cross, the Court finds that the act of ordering Plaintiff to be escorted to a holding cell was not adverse to Plaintiff's interests, but actually served Plaintiff's interests by allowing further investigation into his rape claim. The Court similarly finds that conducting an interview was not adverse, but served Plaintiff's interests by allowing an

11

investigation concerning Plaintiff's rape claim.  Defendant De La Rosa is entitled to judgment as a matter of law because Plaintiff cannot prove this necessary element of his retaliation claim.

### C. Penological Interest

Finally, Defendants argue that their actions of ending the IDTT meeting, escorting Plaintiff to a holding cell pending an interview, and conducting first a clothed search and then an unclothes search all served legitimate penological interests.  Because the Court finds that ending the IDTT meeting and escorting Plaintiff to a holding cell did not constitute adverse actions, remaining at issue is whether the searches conducted by Defendants Domingo and Cross served legitimate penological interests.  The Court finds that they did.

In Michenfelder v. Sumner, the Ninth Circuit examined whether strip searches that were conducted every time an inmate left or returned to their unit, as well as after movement under escort within the unit, had a legitimate penological purpose.  See 860 F.2d 328, 330 (9th Cir. 1988).  The court concluded that "so long as a prisoner is presented with the opportunity to obtain contraband or a weapon while outside of his cell, a visual strip search has a legitimate penological purpose" because it could be used to discover weapons or other contraband.  Id. at 330, 336.

Here, the undisputed evidence shows that Plaintiff was first taken to a waiting area then escorted to a holding cell pending further interview regarding his rape claim.  Because Plaintiff could have obtained a weapon or other contraband while in the waiting area before being moved under escort, the searches performed by Defendants Domingo and Cross served the legitimate penological purpose of providing institutional security.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends as follows:

    1.      Defendants' motion for summary judgment, ECF No. 43, be GRANTED.

    2.      All other pending motions, ECF Nos. 54 and 55, be DENIED as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  July 22, 2024

                      DENNIS M. COTA
                      UNITED STATES MAGISTRATE JUDGE